# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SHANNON EBERHARDT, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:20-CV-01420-NCC |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Shannon Eberhardt ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 25) and Defendant has filed a brief in support of the Answer (Doc. 30). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 5).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on July 2, 2018 (Tr. 330-31). Plaintiff was initially denied on August 29, 2018, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 250-56, 258-59). After a hearing, by decision dated January 7, 2020, the ALJ found Plaintiff not disabled (Tr. 197-213). On August 8, 2020, the Appeals Council denied

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff's request for review (Tr. 1-7).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017, and that Plaintiff has not engaged in substantial gainful activity since April 10, 2012, through her date last insured (Tr. 202).  Through the date last insured, the ALJ found Plaintiff has the severe impairments of bipolar disorder and generalized anxiety disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 202-03).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations (Tr. 205).  Plaintiff cannot climb ladders, ropes, or scaffolds (*Id.*).  Plaintiff cannot work at unprotected heights or near hazardous machinery (*Id.*).  Plaintiff is limited to performing simple routine, repetitive tasks (*Id.*).  Plaintiff is limited to work that requires few changes in the work setting and only occasional interactions with supervisors, co-workers, and the general public (*Id.*).  The ALJ found Plaintiff unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including stocker, packager, and cleaner (Tr. 207-08).  Thus, the ALJ concluded that Plaintiff has not been under a disability from April 10, 2012, through December 31, 2017, the date last insured (Tr. 209).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. § 404.1529.  "If a claimant fails to meet the

criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. § 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because

substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ's RFC decision is not supported by substantial evidence as it fails to consider all the substantial medical evidence of record or to be based on "some" medical evidence as required under the standards contained in *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000) and *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001). Second, Plaintiff asserts that the ALJ failed to properly evaluate the medical opinion evidence of record. Specifically, Plaintiff argues that the ALJ evaluation of the opinion evidence wholly fails to discuss "supportability" and identifies no specific inconsistencies that would lead to finding the opinion of Matthew Lindquist, APRN[2] ("Nurse Lindquist"), Plaintiff's treating psychiatric nurse practitioner, "unpersuasive" (Doc. 25). Because the ALJ improperly evaluated medical opinion evidence from Nurse Lindquist and failed to discuss the supportability of stage agency administrative findings, the ALJ's RFC determination is not supported by substantial evidence.

The new Social Security regulations regarding the evaluation of medical opinion evidence apply to Plaintiff's case because she filed her application after March 27, 2017. 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 404.1520c(a). Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). An ALJ must explain how she considered the factors of

---

[2] Advanced Practice Registered Nurse.

supportability and consistency in her decision, but need not explain how she considered the other factors.  20 C.F.R. § 404.1520c(b)(2).  The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

The medical record includes three separate medical opinions; the Court will address each in turn.  On September 26, 2019, Plaintiff's treating psychiatric nurse practitioner, Matthew Lindquist, APRN, ("Nurse Lindquist") submitted a Mental Medical Source Statement (Tr. 443).  In his evaluation, Nurse Lindquist indicated that Plaintiff demonstrated marked interference with concentration, persistence, and pace (*Id.*).  Specifically, Nurse Lindquist found Plaintiff to be markedly limited in her ability to initiate and complete tasks in a timely manner, sustain ordinary routine and regular attendance, and maintain necessary concentration to persist at simple routine tasks 8 hours a day, 5 days per week (*Id.*).  Nurse Lindquist estimated Plaintiff's overall pace of production at 31% or below average, the lowest option available (*Id.*).  Nurse Lindquist stated that symptoms including "anxiety, response to internal stimuli, low self-esteem, [and] depression" would likely cause Plaintiff to miss work, be late to work, or need to leave work early three times a month or more (Tr. 444).  In Nurse Lindquist's opinion, Plaintiff's limitations have or will continue to persist 12 continuous months (Tr. 445).

6

Nurse Lindquist listed Plaintiff's then-current diagnoses as bi-polar disorder, generalized anxiety disorder, alcoholic disorder in remission, and opioid use disorder in remission (Tr. 446). Nurse Lindquist based his opinion on objective signs and symptoms including crying, low mood continuing to be mildly labile, episodic difficulty sleeping, and heightened irritability (*Id.*). Notably, Nurse Lindquist concluded his evaluation with the following comment: "With the increased pressures of work it at this time would put her at risk for relapse on substances—currently symptoms again have gotten a little worse. She has had some good periods for several months but still lacks the consistency of even 6 months without some symptoms which would be crippling in a work environment" (*Id.*).

The ALJ considered Nurse Lindquist's opinion and found it "unpersuasive" (Tr. 206). Briefly, the ALJ stated that the opinion was "essentially a 'check-mark' form" and that Nurse Lindquist provided no discussion of Plaintiff's symptoms or basis for his determinations (*Id.*). The ALJ further found the opinion to be inconsistent with Nurse Lindquist's treating notes and Plaintiff's longitudinal record reflecting "generally intact mental functioning" (Tr. 206).

The medical record also includes administrative findings of two state agency consultants dated August 29, 2018. Medical consultant David Marty, MD noted that prior medical records established only mental medically determinable impairments, stating that there was a "lack of functional and medical evidence to support an allowance or fully adjudicate the period being assessed from 2012-12/2018 (DLI)" (Tr. 242). Psychological consultant Barbara Markway, Ph.D. found that medical records supported an established medically determinable impairment of bipolar disorder that is not severe (Tr. 244). She stated: "[o]verall, insufficient evidence to fully adjudicate" (*Id.*).

7

The ALJ found the administrative findings of both state agency consultants "unpersuasive" (Tr. 207). Specifically, the ALJ found their findings inconsistent with "the longitudinal record" (*Id.*). According to the ALJ, "[t]he evidence reflects the claimant's mental impairments do more than minimally affect her ability to perform work-related activities, even if not to the extent alleged" (*Id.*). Thus, the ALJ concluded, the lack of evidence and inconsistency rendered the findings not persuasive (*Id.*).

The ALJ erred in evaluating the persuasiveness of Nurse Lindquist's medical opinion when she failed to appropriately address the opinion's "supportability" and "consistency." In addressing the "supportability" factor, an ALJ may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, that the physician did not examine the claimant, or that the physician did or did not provide a detailed explanation for the opinion. *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases). Here, the ALJ's discussion of supportability is largely confined to her determination that Nurse Lindquist's opinion is a "check-mark" form with no discussion or analysis (Tr. 206). While it is true that "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements," *Swarnes v. Astrue*, Civ. No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted), Nurse Lindquist's opinion did include a significant amount of elaboration on Plaintiff's symptoms and limitations. Specifically, Nurse Lindquist listed objective symptoms that supported his conclusions including crying, sleep problems, heightened irritability, and low mood that he opined would be "crippling in the workplace" (Tr. 446). Additionally, Nurse

Lindquist explained that the pressure of work would put Plaintiff at risk for relapse of substance abuse (*Id.*).

The ALJ also found Nurse Lindquist's medical opinion to be "unpersuasive" because it is inconsistent with his own treatment notes and Plaintiff's longitudinal record (Tr. 206). However, the ALJ did not give further explanation as required by social security regulations (*Id.*). *See* 20 C.F.R. § 404.1520c ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision"). Regardless, Nurse Lindquist's opinion is supported by and consistent with Plaintiff's longitudinal record. Inpatient hospital records from Centerpointe Hospital between August 16, 2015, and September 28, 2015, detail evaluations of Plaintiff documenting "some loose associations," "some circumstantiality," "certain amount of helplessness or hopelessness," and depression and anxiety (Tr. 424-25). Upon admission on August 16, 2015, Plaintiff was administered a psychiatric questionnaire wherein she scored "four yes answers," indicating that she was "so irritable that she shouted at people and started fights and arguments," "she could not slow her mind down," and that she "was so easily distracted by things around her that she had trouble concentrating…" (Tr. 434). In outpatient appointments, Plaintiff is documented presenting as "distressed," "tearful," with sleep disturbances, fatigue, poor self-image, hallucinations, and "easily irritated" (Tr. 451). Throughout the record, Plaintiff had seven medication changes indicating unsatisfactorily controlled symptoms (Tr. 12, 396, 410, 469, 474, 477, 480). Additionally, during Lindquist's lengthy treatment of Plaintiff from August 2015 to March 2020, treatment notes document Plaintiff's subjective mental health complaints (Tr. 8-15, 392-414, 460-85). For example, Nurse Lindquist noted that Plaintiff "continues to struggle with depression and does have crying spells regularly" (Tr. 9). In 2017, Plaintiff

9

complained of excessive sleepiness and struggled to "get up," felt "in a fog," and that her house was "in shambles" (Tr. 396).

The ALJ also erred in evaluating the medical opinion evidence of record when she failed to properly evaluate the "supportability" of the state agency consultant opinions. As addressed previously, an ALJ may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, that the physician did not examine the claimant, or that the physician did or did not provide a detailed explanation for the opinion. *Starman*, 2021 WL 4459729, at *4. Here, the ALJ's discussion of the factors required by regulation was limited to her determination that the consultants' findings are not consistent with the longitudinal record because "[t]he evidence reflects the claimant's impairments do more than minimally affect her ability to perform work-related activities…" (Tr. 207). While it is unclear whether the ALJ actually discussed the supportability of these opinions when she briefly acknowledged the lack of administrative findings, it is equally clear that this is simply not enough to satisfy regulatory requirements. *See Pipkins v. Kijakazi*, No. 1:20 CV 161 CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination).

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to reevaluate the medical opinion evidence of record; further develop the

medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 2nd day of March, 2022.

                                                              /s/ Noelle C. Collins
                                                          NOELLE C. COLLINS
                                                          UNITED STATES MAGISTRATE JUDGE